IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br><br><br>ROBERT LEE LEMASTERS,<br><br>    Defendant. | CRIM. ACTION NO.: 5:19CR6<br>(BAILEY) |

## ORDER VACATING ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS AND REPORT AND RECOMMENDATION THAT DEFENDANT'S MOTION [24] TO SUPPRESS EVIDENCE BE DENIED

On June 7, 2019, this Court filed an Order [45] denying Defendant's Motion [24] to Suppress Evidence. It has since come to the Court's attention that this Court misapprehended the scope of its assignment vis-à-vis Defendant's Motion to Suppress. Accordingly, and for the clarity of the record, this Court now hereby **VACATES** its Order [45] and files the instant **REPORT and RECOMMENDATION** in its place.

## I.
## INTRODUCTION

Defendant, Robert Lee Lemasters (hereinafter "Defendant") was indicted by a grand jury attending the United States District Court for the Northern District of West Virginia on February 5, 2019, charging him with Unlawful Possession of a Firearm, in violation of

18 U.S.C. § 922(g)(1) and 924(a)(2).  Defendant was arraigned and detained pending further proceedings.[1]

On April 16, 2019, Defendant, by and through his attorney, filed a Motion to Suppress Evidence [ECF. No. 24].  On May 17, 2019, came the United States of America ("Government"), by David Perri, Assistant United States Attorney, and Robert Lee LeMasters, in person and by counsel, Brendan Leary, Assistant Federal Public Defender, for a hearing regarding Defendant's Motion to Suppress.  At Defendant's request, a Supplemental Evidentiary Hearing was held on June 4, 2019, at which time additional evidence and argument were submitted to the Court.  After having a chance to consider the written briefs of the parties, the evidence submitted, and the arguments made during the hearings noted above, the Court would **RECOMMEND** that Defendant's Motion to Suppress be **DENIED**.

## II.
## FACTUAL/PROCEDURAL HISTORY

In October 2018, Defendant was working at the Go-Mart in Paden City, West Virginia.  On October 18, 2018, Defendant was allegedly captured on store surveillance printing himself a $100.00 lottery ticket and placing it in his backpack.  As a result, he was to be fired when he reported to work on October 19, 2019.  The Manager and District Manager, both women, feared that Defendant would not react well to the firing and requested assistance from the Paden City Police Department.  The Paden City Police Department sent Officer Raphe Bailes to the Go-Mart for Defendant's termination.

Defendant appeared for work on October 19th carrying the same backpack into which he placed the $100.00 lottery ticket.  After his termination, he was arrested for Disorderly Conduct,

---

[1] In the interim, a superseding indictment has been filed and Defendant was arraigned on the same on June 10, 2019.

2

Resisting Arrest, and Assault on a Police Officer. He was secured in the back of Officer Bailes' patrol car. Officer Bailes then searched Defendant's backpack where he found the firearm which forms the basis for the instant indictment, as well as the subject lottery ticket. Defendant filed a Motion to Suppress seeking to suppress evidence obtained as a result of that search.

## III.
## ARGUMENTS OF THE PARTIES

### A. Defendant's Arguments

Defendant contends that the Government violated Defendant's Fourth Amendment Right against unreasonable searches and seizures when Officer Bailes searched Defendant's backpack because said search was conducted in the absence of a warrant and was not justified by officer safety. Defendant also argues that the Good Faith Exception to the exclusionary rule does not apply. Defendant contends that no evidence of the crimes charged (Disorderly Conduct, Resisting Arrest, and Assault on an Officer) could be found in the backpack. Finally, Defendant argues that there was no probable cause to arrest Defendant on the day in question.

### B. Government's Arguments

The Government contends that Defendant's Motion has no merit because Defendant lacks standing to challenge the search as he abandoned the backpack. Even if he could not be considered as having abandoned the backpack, the search was a lawful search incident to arrest. The Government also argues that, even if Defendant has standing to challenge the search and the search was not a lawful search incident to arrest, the contraband would have eventually been discovered pursuant to a routine inventory search, which search is an exception to the warrant requirement. Finally, the Government contends that probable cause existed to effectuate Defendant's arrest on the day in question.

# IV.
# DISCUSSION

### A. Probable Cause[2]

During the supplemental hearing of June 4, 2019, Defendant conceded the following factors with respect to his arrest for Disorderly Conduct: (1) Defendant was in a public place at the time of the events which are relevant to the Court's inquiry; (2) Defendant was being profane and using indecent and profane language; and (3) Officer Bailes asked Defendant to stop the profanity before Officer Bailes arrested Defendant.[3] Defendant made clear, however, that he contests any allegation that his behavior on the day in question disturbed the peace of others. Defendant presents several specific arguments in support of this contention. The Court will address each argument *in seriatim*.

#### 1. 'Others' as used in the Disorderly Conduct Statute, W.Va. Code § 61-6-1b

In support of this position, Defendant first argues that "others" as used in the statute applies to persons other than law enforcement officers. In particular, Defendant argues that the specific mention of "law enforcement" in the statute means that "others" must be interpreted as persons "other than law enforcement officers." This argument is not persuasive. There is no case law or statutory interpretation of which the Court is aware that calls for this reading of the statute. Additionally, there is no statutory or case law of which the Court is aware that specifically excludes law enforcement officers from the word "others" as used in the statute. To the contrary, a plain reading of the statute suggests the word "others" means those persons other than the "person who, in a public place…disturbs the peace…by…profane, indecent or

---

[2] The Court has addressed Defendant's arguments out of the order presented in the briefs and as presented during the hearings. In particular, the Court has addressed the issue of probable cause first because, without probable cause to arrest, there would be no basis for the search of Defendant's backpack.
[3] Officer Bailes testified that he twice asked Defendant to stop his behavior and warned Defendant that, if he persisted, he would be arrested. The Court takes Defendant's concession as encompassing all of these aforementioned facts.

boisterous conduct or language…that is intended to cause annoyance or alarm." Stated a different way, "others" in this case includes persons other than Defendant. Persons other than Defendant could and would naturally include law enforcement officers, and specifically in this case, Officer Bailes.

### 2. Evidence re: "disturb the peace of others"

Defendant next argues that his actions did not disturb the peace of others at the time of his arrest. As a result, there was no probable cause to arrest him for Disorderly Conduct. In support of this argument, Defendant cites the surveillance video from the store, including video surveillance from the managers' office, which Defendant claims confirms that no employee or customer appeared to be disturbed by Defendant's conduct. Defendant also presented the testimony of Mary Anderson, who was working the cash register at the front of the store at the time of Defendant's arrest, and who testified that she was not disturbed by Defendant's profanities or the events unfolding between Defendant and Officer Bailes. Defendant also relies upon Officer Bailes' testimony wherein he stated that he was unaware of whether the events leading to Defendant's arrest disturbed Ms. Anderson or anyone else in the store at the time of Defendant's arrest. According to Defendant, after taking the aforementioned evidence into account, the only peace Defendant disturbed was that of Officer Bailes.[4] Notwithstanding the aforementioned evidence, this argument is not persuasive.

Officer Bailes may have been unaware of whether the events leading to Defendant's arrest <u>actually</u> disturbed Ms. Anderson or anyone else in the store.[5] However, Officer Bailes' knowledge of how the employees and the customers in the store <u>actually</u> felt about Defendant's

---

[4] Defendant maintains that his profanities were directed to Officer Bailes because Officer Bailes was the one who fired him. Officer Bailes testified that he advised Defendant that he was fired at the request of the Go-Mart Manager and District Manager.
[5] Officer Bailes testified numerous times during at the June 4, 2019, hearing that he was not focused on the reactions of others within the store because he was focused on Defendant during these events.

actions is of no moment. The question of whether there is probable cause to arrest a person for Disorderly Conduct does not rest on the actual feelings of bystanders. Rather, the relevant inquiry is whether the facts and circumstances within the knowledge of the arresting officer are sufficient to lead a prudent man to believe that a person had committed or was in the process of committing Disorderly Conduct. *Reed v. Hill*, 235 W.Va. 1, 9-10, 77 S.E.2d 501, 509-510 (2015) ("probable cause to make an arrest without a warrant exists when the facts and circumstances within the knowledge of the arresting officers are sufficient to warrant a prudent man in believing that an offense has been committed"). After examining the statute, it is clear that the facts and circumstances within Officer Bailes' knowledge on the date of this incident were enough to warrant a prudent man's belief that an offense was being or had been committed.

> The West Virginia Disorderly Conduct statute provides in relevant part as follows:
>
> Any person who, in a public place, any office or office building of the State of West Virginia, or in the State Capitol complex, or on any other property owned, leased, occupied or controlled by the State of West Virginia, a mobile home park, a public parking area, a common area of an apartment building or dormitory, or a common area of a privately owned commercial shopping center, mall or other group of commercial retail establishments, disturbs the peace of others by violent, profane, indecent or boisterous conduct or language or by the making of unreasonably loud noise that is intended to cause annoyance or alarm to another person, and who persists in such conduct after being requested to desist by a law-enforcement officer acting in his or her lawful capacity, is guilty of disorderly conduct, a misdemeanor and, upon conviction thereof, may be confined in jail for twenty-four hours or fined not more than $100: *Provided,* That nothing in this subsection should be construed as a deterrence to the lawful and orderly public right to demonstrate in support or protest of public policy issues.

W. Va. Code § 61-6-1b. As Defendant has admitted, at the time of the events at issue, he was in a public place and was being profane. There is evidence that Defendant was angry because he had been fired. There is evidence that he was boisterous. There is evidence that the Manager and District Manager were fearful of Defendant's reaction to being fired. There is evidence that

6

Defendant 'got in Officer Bailes' face' and that he stated that he 'hoped the place (the Go-Mart) burned'.[6]  Other persons were present and witnessed Defendant's behavior.  Given these circumstances, it was reasonable for Officer Bailes to conclude that Defendant disturbed the peace of the people in the store.  Thus, probable cause existed for Officer Bailes to arrest Defendant for Disorderly Conduct.

Moreover, "a law enforcement officer may have evidence sufficient to establish probable cause for an arrest, even if that evidence is less than what would be needed to ultimately convict at a criminal trial."  *Reed*, 770 S.E.2d at 510.  Therefore, and again, simply because Officer Bailes did not know whether Defendant's actions <u>actually</u> disturbed the customers and employees in the store at the time of the events at issue is irrelevant.  Officer Bailes did not need to possess such information at the time of his arrest, only knowledge of facts and circumstances that would lead a prudent man to believe Defendant was committing Disorderly Conduct.  As the Court has explained, those existed at the time of Defendant's arrest.[7]

### 3. First Amendment Considerations

Defendant further argues that there is a First Amendment right to cuss at a police officer. Defendant relies upon *City of Houston, Tex. v. Hill*, 482 U.S. 451, 465 (1987)[8] to support this assertion.  An examination of this case, however, reveals no such declaration.  Rather, the aforementioned case addressed the issue of whether a municipal ordinance that made it unlawful to interrupt a police officer while the police officer was performing his or her duties was

---

[6] Testimony of Mary Anderson given June 4, 2019, statement of Mary Anderson introduced at the hearing of June 4, 2019, and testimony of Officer Raphe Bailes given May 17, 2019 and June 4, 2019.

[7] Requiring law enforcement officers to have evidence sufficient to sustain a conviction at the time of a person's arrest would obfuscate the probable cause standard and would effectively transform an arrest into a judgment of guilt in the absence of a jury.

[8] For this case and the cases that follow, discussion of a person's First Amendment rights as they are related to police officers are discussed in the context of the applicability of the qualified immunity doctrine.  As the qualified immunity doctrine is not involved in the instant matter, and as two out of three of the cases are unpublished decisions, they are of little benefit.  Nevertheless, the Court will address them.

unconstitutionally overbroad under the First Amendment.[9] *See City of Houston, Tex.*, 482 U.S. 451. The Supreme Court summarized the subject exchange as follows:

> The incident that sparked this lawsuit occurred in the Montrose area on February 14, 1982. Hill observed a friend, Charles Hill, intentionally stopping traffic on a busy street, evidently to enable a vehicle to enter traffic. Two Houston police officers, one of whom was named Kelley, approached Charles and began speaking with him. According to the District Court, "shortly thereafter" Hill began shouting at the officers "in an admitted attempt to divert Kelley's attention from Charles Hill"….Hill first shouted: "Why don't you pick on somebody your own size?" After Officer Kelley responded: "[A]re you interrupting me in my official capacity as a Houston police officer?" Hill then shouted: "Yes, why don't you pick on somebody my size?"….Hill was arrested under Houston Code of Ordinances § 34–11(a), for "wilfully or intentionally interrupt[ing] a city policeman ... by verbal challenge during an investigation."….Charles Hill was not arrested. Hill was then acquitted after a nonjury trial in Municipal Court.

*City of Houston,* 482 U.S. at 454 (internal citations omitted). The pertinent municipal ordinance provided in relevant part as follows:

> Sec. 34–11. Assaulting or interfering with policemen.
>
> (a) It shall be unlawful for any person to assault, strike or in any manner oppose, molest, abuse or interrupt any policeman in the execution of his duty, or any person summoned to aid in making an arrest.

*City of Houston*, 482 U.S. at 455. As is clear, both from the exchange and from the statute at issue, this case did not involve a defendant cussing at or using profanities to a police officer.

Defendant also cites *Osborne v. Lohr-Robinette*, No. 1:05-0106, 2006 WL 3761597 (S.D.W.Va. Dec. 20, 2009) in support of this position. However, an examination of *Osborne v. Lohr-Robinette*, similarly reveals no declaration that a person has a First Amendment right to use profanities when speaking to a cop. Rather, the Court acknowledges First Amendment protections for a "significant amount of verbal criticism and challenge directed at police officers." *Osborne*, 2006 WL 3761597 at *6. However, the Court also acknowledges that such

---

[9] The Supreme Court held that such a statute is in fact unconstitutionally overbroad under the First Amendment.

protections are not "without limits." Insulting or fighting words are not protected by the First Amendment. *Id.* The Court goes on to explain that "Courts are divided about whether profane epithets directed at police officers should be considered constitutionally protected speech." *Id.* at *7. The Court also explained that "[t]he Fourth Circuit has not yet addressed this issue." *Id.*[10]

In *Osborne*, Ms. Osborne was asked to leave a town council meeting after a tense exchange with the newly-elected mayor. *Id.* at *1. Officer Randall Proffitt escorted Ms. Osborne from the meeting. Ms. Osborne and Officer Proffitt also exchanged words as Ms. Osborne exited the premises, which culminated with Ms. Osborne calling Officer Proffitt an "asshole," "son of a bitch," and "Opie-Taylor-looking motherfucker." Officer Proffitt arrested Ms. Osborne for Disorderly Conduct and Obstructing an Officer. Officer Proffitt admitted that he placed Ms. Osborne under arrest solely because of the verbal exchange which took place between himself and Ms. Osborne after she left the meeting. *Id.* at *2-*3.

Ms. Osborne filed a civil complaint asserting violations of 42 U.S.C. § 1983, among other claims. The parties filed cross-motions for summary judgment. After considering the applicable law, including the circuit split regarding this issue, the District Court ultimately decided that "directing profane epithets at a police officer does not fall within the fighting words exception to the First Amendment." *Id.* at *7. However, the District Court went on to hold that, because of the circuit split, and because there was "no decision either from the Supreme Court or the Fourth Circuit that sheds light on the question [whether profane epithets to police officers falls within the fighting words exception to the First Amendment]…it cannot be said that a reasonable person in defendant Proffitt's position should have known that arresting plaintiff because of her offensive speech violated her clearly established constitutional rights." *Id.* Such

---

[10] This Court acknowledges that the *Osborne* case is a 2006 case. However, the Court is unaware of a Fourth Circuit case or a United States Supreme Court case which has decided this issue.

a holding is of limited applicability here because the facts of the *Osborne* case are distinguishable from the factual evidence in the instant matter.

As is evident from the record, Defendant did more than call Officer Bailes names. Indeed, the evidence indicates that Defendant threatened Officer Bailes and the people in the Go-Mart at the time of the incident. According to Mary Anderson, Defendant was 'highly upset,' and 'angry' with Officer Bailes. During his exchange with Officer Bailes, Defendant got into Officer Bailes' face and told Officer Bailes to '[g]o fuck himself.'[11] According to Officer Bailes, after Defendant was terminated and while Officer Bailes was directing Defendant to the front door, Defendant yelled '[f]uck this place and everyone in it. I hope it burns.'[12]

The act of getting into Officer Bailes' face, and the statement "[f]uck this place and everyone in it. I hope it burns," are more than profane epithets directed to a police officer. The act of getting into someone's face and saying 'go fuck yourself' is in many instances used to and interpreted as starting a fight. Therefore, as far as the statements to officer Bailes are concerned, it would appear that the fighting words exception applies. Additionally, and notwithstanding the above, the statement "[f]uck this place and everyone in it. I hope it burns," is directed to all persons in the store, including customers, employees, the Manager and the District Manager who fired Defendant only moments before. Because these statements are not directed solely to Officer Bailes, Defendant's First Amendment rights vis-à-vis statements to a police officer are not implicated as to the same.

With respect to any argument that Defendant had a general, First Amendment right to use profanities in public, the Court would similarly find this argument unpersuasive in this instance given the statement which immediately followed the profanity. As was noted above, the

---

[11] Testimony of Mary Anderson given June 4, 2019, and statement of Mary Anderson introduced into evidence during the June 4, 2019, hearing.
[12] At that point, Officer Bailes placed Defendant under arrest for Disorderly Conduct.

statement "I hope it burns," appears to have been directed to all persons inside the Go-Mart on the day in question and adds an additional layer of menace to the profanities used by Defendant. Given the circumstances surrounding Defendant's arrest, this statement alone[13] is enough to constitute probable cause for arrest for Disorderly Conduct.

The final case cited by Defendant is *George v. Kanawha County Sheriff's Dept.,* No. 2:08-0141, 2009 WL 347782 (Feb. 3, 2009). Again, review of this case reveals no declaration that there is a First Amendment right to use profanities with a police officer. In *George,* a humane officer arrived at the residence of Tina George and complained that her dog (a Chihuahua) was chained outside without a doghouse. Ms. George informed the humane officer, Dick Coll, that the dog was an inside dog and did not need a doghouse. As this was the second such visit (Ms. George did not receive a citation either time), Ms. George called the Kanawha County Sheriff's Office to report that Mr. Coll was harassing her. The Sheriff's Office, Deputy J.M. Vernon, responded to the residence. At some point (it is unclear from the decision what transpired prior to these facts) Ms. George began cursing at Officer Coll and was highly agitated. She was handcuffed and placed in the back of the patrol car. As this happened, she head-butted the door, leaving a dent in the car. She continued to curse and directed her attention to the Sheriff's Deputy. She was charged with Destruction of Property and Obstructing an Officer. *Id.* at *4.

Ms. George filed a civil suit pursuant to 42 U.S.C. § 1983, alleging that her civil rights had been violated in connection with her arrest and incarceration. *Id.* at *3. The District Court considered Officer Vernon's objection to the Magistrate's recommendation that he be denied

---

[13] By 'alone,' the Court means this statement in the absence of any statements made to Officer Bailes. Additionally, usage of the word 'alone' is not intended to imply that probable cause was present based on one statement. Rather, it is this statement in conjunction with all other circumstances previously enumerated that forms the basis for probable cause to arrest for Disorderly Conduct.

11

qualified immunity with respect to Ms. George's First Amendment Claim. *Id.* at *3. In so considering, and as in *Osborne*, the District Court noted the split between circuits with respect to the use of profanity towards police officers. Specifically, the District Court noted that "at least two circuit courts of appeal have observed…that it would violate clearly established law for a law enforcement officer to arrest an individual in retaliation for the use of profanity." *Id.* at *3 (internal quotations and citations omitted). Notwithstanding, and again as in *Osborne*, the District Court noted that the Supreme Court and the Courts of Appeals have observed that "the freedom verbally to challenge police action is not without limits." *Id*. (internal quotations and citations omitted). Accordingly, no absolute First Amendment right to direct profanities to a police officer was acknowledged.[14]

### 4. Unreasonably Loud Noise

Finally, to the extent Defendant argues that in order to find probable cause, Defendant's profane language must have also been 'unreasonably loud,' this argument is without merit. Unreasonably loud profane language is not required under the West Virginia Disorderly Conduct statute for behavior to constitute a violation thereof. Rather, profanity and an unreasonably loud noise are alternatives as indicated by comma placement and use of the word "or" within the statute. *See* W. Va. Code § 61-6-1b ("[a]ny person who…disturbs the peace of others by violent, **profane**, indecent or boisterous conduct or language **or by the making of unreasonably loud noise**…) (emphasis added).

For all of these reasons, this Court believes that probable cause existed for Defendant's arrest for Disorderly Conduct in violation of W. Va. Code § 61-6-1b. Accordingly, the Court consider the balance of Defendant's arguments.

---

[14] Ultimately, the District Court overruled Deputy Vernon's objection to the Magistrate's recommendation, finding that further factual development was necessary to better evaluate the applicability of the qualified immunity defense.[14] *Id.*

### B. Standing

The Government argues that Defendant does not have standing to challenge the search of his backpack following his arrest because he abandoned the bag just before he was arrested. The Government relies upon *Abel v. United States*, 362 U.S. 217, 241 (1960) to support this argument. Specifically, and pursuant to *Abel,* the Government contends that Defendant relinquished his privacy expectation when he flung the backpack up the candy aisle and into the clerk's area around the cash register at the time of his arrest. The Government also cites several cases as they relate to the privacy expectation: *Katz v. United States,* 389 U.S. 347 (1967); *Rawlings v. Kentucky*, 448 U.S. 98 (1980); and *United States v. Castellanos*, 716 F.3d 828, 832 (4th Cir. 2013).

In *Abel*, Defendant was charged with espionage, among other things. Defendant challenged the warrantless search of his hotel room in New York City as violating the 4th Amendment and argued that several pieces of evidence should not have been admitted because of this search. With respect to two of these items, a pen and a block of wood containing a cipher pad, the Supreme Court found that Defendant did <u>not</u> have an expectation of privacy as they had been abandoned in a trash can in the hotel room he vacated shortly before he checked out and shortly before his arrest. *Abel,* 362 U.S. at 241.

Defendant maintains that he did not throw, fling or otherwise abandon his backpack just prior to his arrest. Rather, Defendant contends that he dropped the backpack as ordered to do so, and as Officer Bailes caused him to do when Officer Bailes pushed him forward against the clerk's counter to effectuate the arrest. Defendant contends that surveillance video from the store during the arrest confirms Defendant's account of events.

After considering the arguments made, the case law cited, and after considering Officer Bailes' testimony in conjunction with the surveillance videos published during the hearings and submitted as evidence, this Court believes that Defendant threw his backpack in the direction of the clerk's space behind the cash register at the time of his arrest. Indeed, it does not appear as though Defendant was thrown with such force by Officer Bailes as to cause Defendant to inadvertently fling the backpack behind the clerk's area. To the contrary, it appears that Officer Bailes was struggling to effectuate the Defendant's arrest[15] and that Defendant was able to move and maneuver as he saw fit just prior to being handcuffed, which includes his throwing the backpack away from his person. Pursuant to *Abel,* once Defendant threw his backpack in the direction of the clerk's area, he abandoned it and therefore lost any reasonable expectation of privacy in the backpack. When Defendant tossed the backpack, he had just been fired, so he had no connection to the convenient store that would or even might give rise to a reasonable expectation of privacy in items left therein. Additionally, such an action clearly demonstrates that Defendant was trying to disclaim association with the backpack (and whatever was inside). Accordingly, and for these reasons, this Court would agree that Defendant does not have standing to challenge the search because he abandoned the backpack in question.

Because Defendant abandoned the subject backpack before he was arrested, the search of the backpack should not be and cannot be considered a search incident to arrest. Accordingly, Defendant's arguments that this was not a lawful search incident to arrest and that no evidence of the crimes charged would be found in the backpack are of no moment.

---

[15] Officer Bailes' struggle appears to be, at least in part, due to the difference in height and weight between Defendant and Officer Bailes as Officer Bailes is considerably smaller in stature than Defendant.

### C. Inventory Search

Assuming that Defendant has standing to challenge the search of his backpack, and even if the search of the backpack could be considered as unlawful, the Court would nevertheless **RECOMMEND** that Defendant's Motion to Suppress **BE DENIED** because the items which Defendant seeks to suppress, and which were found inside the backpack, would have been found when an inventory search of the backpack was conducted at the time Defendant was processed for the jail.

As the Court found above, Defendant's arrest was lawful. Therefore, if police follow standardized caretaking procedures and act in good faith in conducting an inventory search, any evidence obtained during such a search is admissible. *Colorado v. Bertine*, 479 U.S. 367 (1987). There is no evidence or argument that police failed to follow standardized caretaking procedures in this matter. To the contrary, Officer Bailes gave testimony which described the standardized caretaking procedures for personal items when a person is arrested and brought to the Northern Regional Jail, and further testified regarding his efforts to comply with the same. There is similarly no evidence or argument that Officer Bailes or anyone else associated with the arrest did not act in good faith where the backpack was concerned.

Finally, Defendant argues that it was not necessary for Officer Bailes to retrieve the backpack from the Go-Mart and thus subject it to a search because Defendant's girlfriend, Melinda Thompson, was present and could have taken custody of the bag. This is not persuasive. According to the evidence, Ms. Thompson did not arrive at the scene until after Defendant had been arrested. Further, Defendant was in possession of this backpack during the events which preceded his arrest. Therefore, and according to Officer Bailes' testimony,

protocol dictated processing the backpack with Defendant following his arrest. The Court is unaware of any legal authority to the contrary.[16]

# V.
# CONCLUSION

Accordingly, and for all of the foregoing reasons, the Court **RECOMMENDS** that the Defendant's Motion to Suppress Evidence [ECF No. 24] be **DENIED**.

Any party who appears *pro se* and any counsel of record, as applicable, may, within **fourteen (14) days** after being served with a copy of this Report and Recommendation file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to forward a copy of this Order to parties who appear pro se and all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia, to the United States Marshals Service and to the United States Probation Office.

Dated: 6/11/19

/s/ James P. Mazzone
JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE

---

[16] In light of the Court's analysis vis-à-vis the issue of an 'inventory search', there is no need to consider whether the search itself constituted a lawful search incident to arrest.