**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling**

**UNITED STATES OF AMERICA**,

        Plaintiff,

    v.                                         **Criminal No. 5:19-CR-6**
                                                     Judge Bailey

**ROBERT LEE LEMASTERS**,

        Defendant.

## ORDER DENYING MOTION TO SUPPRESS

Pending before this Court is Defendant's Motion to Suppress Evidence [Doc. 24], filed April 16, 2019. The Government filed its response to the Motion on May 6, 2019 [Doc. 26]. On May 16, 2019, the defendant filed Mr. Lemasters' Reply to Government's Response and Supplement to his Motion to Suppress Evidence [Doc. 27], which broadened the grounds for the suppression motion. A hearing was held on the Motion on May 17, 2019, before the Hon. James P. Mazzone, M.J. [Doc. 28].

Per Court direction, the Government filed a response to the supplemental motion on May 22, 2019 [Doc. 32], with the defendant filing a reply the next day [Doc. 33]. On June 4, a second hearing was held to address the new allegations in the supplement to the motion to suppress [Doc. 38]. On June 11, 2019, Judge Mazzone issued his Report and Recommendation ("R&R"), recommending that the motion to suppress be denied.

After an extension of time to file objections to the R&R, the defendant filed his objections on July 8, 2019 [Doc. 60]. The Government responded on July 10 [Doc. 61].

1

This Court's review of the magistrate judge's findings and recommendations regarding a suppression motion is *de novo*, whether or not issues or evidence presented in the district court were presented below. 28 U.S.C. § 636(b)(1); ***United States v. George***, 971 F.2d 1113, 1118 (4th Cir. 1992); ***United States v. Miller***, 925 F.2d 695, 698 (4th Cir. 1991); ***Wimmer v. Cook***, 774 F.2d 68, 75 (4th Cir. 1985).

In October 2018, defendant was working at the Go-Mart in Paden City, West Virginia. On October 18, 2018, defendant was allegedly captured on store surveillance printing himself a $100.00 lottery ticket and placing it in his backpack. As a result, he was to be fired when he reported to work on October 19, 2018. The Manager and District Manager, both women, feared that defendant would not react well to the firing and requested assistance from the Paden City Police Department. The Paden City Police Department sent Officer Raphe Bailes to the Go-Mart for defendant's termination.

Defendant appeared for work on October 19, carrying the same backpack into which he placed the $100.00 lottery ticket. After his termination, he was arrested for Disorderly Conduct, Resisting Arrest, and Assault on a Police Officer. He was secured in the back of Officer Bailes' patrol car. Officer Bailes then searched defendant's backpack where he found the firearm which forms the basis for the instant indictment, as well as the subject lottery ticket.

The defendant argues that there was no probable cause to arrest the defendant. Inasmuch as a lack of probable cause would be a deciding factor, this Court will address it first.

The West Virginia Disorderly Conduct statute provides in relevant part as follows:

> Any person who, in a public place, any office or office building of the State of West Virginia, or in the State Capitol complex, or on any other property owned, leased, occupied or controlled by the State of West Virginia, a mobile home park, a public parking area, a common area of an apartment building or dormitory, or a common area of a privately owned commercial shopping center, mall or other group of commercial retail establishments, disturbs the peace of others by violent, profane, indecent or boisterous conduct or language or by the making of unreasonably loud noise that is intended to cause annoyance or alarm to another person, and who persists in such conduct after being requested to desist by a law enforcement officer acting in his or her lawful capacity, is guilty of disorderly conduct, a misdemeanor and, upon conviction thereof, may be confined in jail for twenty-four hours or fined not more than $100: Provided, That nothing in this subsection should be construed as a deterrence to the lawful and orderly public right to demonstrate in support or protest of public policy issues.

W. Va. Code § 61-6-1b.

The defendant contends that the term "others" does not include a law enforcement officer, providing no case law to support his position. A person does not cease to be a person by becoming a police officer. This Court finds no basis to exclude a law enforcement officer from the statute's protection.

The defendant also contends that some of the actions which may be deemed to be disturbing happened in the office area of the store, an area not generally open to the public. The defendant agreed that the store was a public place, but now appears to want to parse

out the office area. This Court cannot buy the distinction. If the events inside the office were audible or perceptible to persons in the public area, the events may be considered disturbing. This is much the same as a person in an apartment building who is playing his stereo[1] very loudly. The fact that the music is coming **from** a private place into a public place does not prevent the music from being disturbing to the public peace.

The defendant also contends that his actions did not disturb the peace of others. He points out that Officer Bailes did not take time to view or interview others who were in the store. As noted by Judge Mazzone:

> Officer Bailes may have been unaware of whether the events leading to defendant's arrest actually disturbed Ms. Anderson or anyone else in the store. However, Officer Bailes' knowledge of how the employees and the customers in the store actually felt about defendant's actions is of no moment. The question of whether there is probable cause to arrest a person for Disorderly Conduct does not rest on the actual feelings of bystanders. Rather, the relevant inquiry is whether the facts and circumstances within the knowledge of the arresting officer are sufficient to lead a prudent man to believe that a person had committed or was in the process of committing Disorderly Conduct. **Reed v. Hill**, 235 W.Va. 1, 9-10, 77 S.E.2d 501, 509-510 (2015) ("probable cause to make an arrest without a warrant exists when the facts and circumstances within the knowledge of the arresting officers are sufficient to warrant a prudent man in believing that an offense

---

[1] For those younger readers: stereo = a stereophonic CD player, record player, etc.

has been committed").

[Doc. 47, p. 6].

Many people, when faced with a tense situation being caused by another, tend to keep quiet, hoping not to be involved or to draw the attention of the offender. For that reason, having an officer look around to see if anyone is visibly offended would provide no real information. Certainly, no officer could be expected to turn his attention away from the offender and go interview bystanders.

A prudent officer in Officer Bailes' situation, considering the information available and prevailing circumstances, could have reasonably believed that the defendant was committing Disorderly Conduct. "Probable cause exists when the facts and circumstances known to the officer would warrant the belief of a prudent person that the arrestee had committed or was committing an offense." **Taylor v. Waters**, 81 F.3d 429, 434-35 (4th Cir. 1996)(internal quotations and citations omitted) (". . .[A]n officer in Investigator Waters' position could reasonably have believed that the facts known to him were sufficient to establish probable cause."); **Ross v. Early**, 746 F.3d 546, 561 (4th Cir. 2014); **United States v. Manbeck**, 744 F.2d 360, 376 (4th Cir. 1984). See also, **Devenpeck v. Alford**, 543 U.S. 146, 152 (2004); **Beck v. Ohio**, 379 U.S. 89, 91 (1964).

The defendant relies, in part, on the testimony of Mary Anderson, an employee of the Go-Mart and a friend of the defendant. While her testimony did seem to minimize the actions of the defendant, she did admit to hearing profanity, that he did not calm down until the officer told him that he was under arrest, and that the officer warned him about continuing his outburst. Her written statement indicates that the defendant got in the

5

Officer's face, that when he was told that he was being placed under arrest, Mr. Lemasters did not comply, but continued to move towards the door, telling the Officer to go fuck himself. It is interesting that, during the entire scuffle and profanity, Ms. Anderson did not look at what was going on, consistent with the way that person's may act when confronted with such a situation.

The defendant also argues that he had a first amendment right to direct profanity at the police officer. This Court need not make that determination. The profanity and comments about hoping that the store would burn were not directed solely at the officer but also included the store management.

The defendant was in a public place and was being profane. There is evidence that defendant was angry because he had been fired. There is evidence that he was boisterous. There is evidence that the Manager and District Manager were fearful of defendant's reaction to being fired. There is evidence that defendant "got in Officer Bailes' face" and that he stated that he "hoped the place (the Go-Mart) burned." All of the above supports Officer Bailes' decision to place the defendant under arrest.

While the defendant believes that the fear on the part of management is of no consequence, it does show that they were very susceptible to having their peace disturbed.

For these reasons, this Court is of the opinion that probable cause existed to place the defendant under arrest for disturbing the peace.

The significant briefing and discussion concerning the elements of disturbing the peace overlooks the fact that the defendant ws also placed under arrest for resisting arrest. Based upon a review of the videotape, as well as the testimony presented at the hearing, there certainly was probable cause to arrest the defendant for resisting arrest.

Finally, to the extent defendant argues that in order to find probable cause, defendant's profane language must have also been 'unreasonably loud,' this argument is without merit. Unreasonably loud profane language is not required under the West Virginia Disorderly Conduct statute for behavior to constitute a violation thereof. Rather, profanity and an unreasonably loud noise are alternatives as indicated by comma placement and use of the word "or" within the statute. See W. Va. Code § 61-6-1b ("[a]ny person who…disturbs the peace of others by violent, profane, indecent or boisterous conduct or language **or by the making of unreasonably loud noise**…) (emphasis added).

The Government argues that defendant does not have standing to challenge the search of his backpack following his arrest because he abandoned the bag just before he was arrested. The Government relies upon *Abel v. United States*, 362 U.S. 217, 241 (1960), to support this argument. Specifically, and pursuant to *Abel*, the Government contends that defendant relinquished his privacy expectation when he flung the backpack into the clerk's area around the cash register at the time of his arrest. The Government also cites several cases as they relate to the privacy expectation: *Katz v. United States*, 389 U.S. 347 (1967); *Rawlings v. Kentucky*, 448 U.S. 98 (1980); and *United States v. Castellanos*, 716 F.3d 828, 832 (4th Cir. 2013).

In *Abel*, defendant was charged with espionage, among other things. Defendant challenged the warrantless search of his hotel room in New York City as violating the Fourth Amendment and argued that several pieces of evidence should not have been admitted because of this search. With respect to two of these items, a pen and a block of wood containing a cipher pad, the Supreme Court found that defendant did not have an

expectation of privacy as they had been abandoned in a trash can in the hotel room he vacated shortly before he checked out and shortly before his arrest. *Abel*, 362 U.S. at 241.

Defendant maintains that he did not throw, fling or otherwise abandon his backpack just prior to his arrest. Rather, defendant contends that he dropped the backpack as ordered to do so, and as Officer Bailes caused him to do when Officer Bailes pushed him forward against the clerk's counter to effectuate the arrest. Defendant contends that surveillance video from the store during the arrest confirms defendant's account of events.

After considering the arguments made, the case law cited, and after considering Officer Bailes' testimony in conjunction with the surveillance videos published during the hearings and submitted as evidence, this Court agrees with Judge Mazzone that defendant threw his backpack in the direction of the clerk's space behind the cash register at the time of his arrest. Indeed, it does not appear as though defendant was thrown with such force by Officer Bailes as to cause defendant to inadvertently fling the backpack behind the clerk's area. To the contrary, it appears that Officer Bailes was struggling to effectuate the defendant's arrest and that defendant was able to move and maneuver as he saw fit just prior to being handcuffed, which includes his throwing the backpack away from his person.

The record simply does not support his claim that he "dropped" the bag. "Dropping" normally refers to the action of simple gravity upon an object when it is released, usually from an elevated point. Gravity does not normally cause objects to be thrown sideways. The video shows the defendant straining to get away from Officer Bailes and lunging with his right arm (the arm that was holding the backpack). Indeed, this was the reason why Officer Bailes was having so much difficulty getting hold of both the defendant's arms. Another angle shows the bag abruptly hitting the base of the cash register at the other side

8

of the check-out station. The contention that he was somehow forcibly separated from the bag is not supported by the testimony of Officer Bailes or by the video.

Pursuant to **Abel**, once defendant threw his backpack in the direction of the clerk's area, he abandoned it and therefore lost any reasonable expectation of privacy in the backpack. When defendant tossed the backpack, he had just been fired, so he had no connection to the convenient store that would or even might give rise to a reasonable expectation of privacy in items left therein. Additionally, such an action clearly demonstrates that defendant was trying to disclaim association with the backpack (and whatever was inside).

Accordingly, and for these reasons, this Court would agree that defendant does not have standing to challenge the search because he abandoned the backpack in question. Because defendant abandoned the subject backpack before he was arrested, the search of the backpack should not be and cannot be considered a search incident to arrest. Accordingly, Defendant's arguments that this was not a lawful search incident to arrest and that no evidence of the crimes charged would be found in the backpack are of no moment.

Assuming that defendant has standing to challenge the search of his backpack, and even if the search of the backpack could be considered as unlawful, the Court would nevertheless find that the items which defendant seeks to suppress, and which were found inside the backpack, would have been found when an inventory search of the backpack was conducted at the time defendant was processed for the jail.

Defendant's arrest was lawful. Therefore, if police follow standard property caretaking procedures and act in good faith in conducting an inventory search, any evidence obtained during such a search is admissible. ***Colorado v. Bertine***, 479 U.S. 367

(1987). There is no evidence or argument that police failed to follow standardized caretaking procedures in this matter. To the contrary, Officer Bailes gave testimony which described the standardized caretaking procedures for personal items when a person is arrested and brought to the Northern Regional Jail, and further testified regarding his efforts to comply with the same. There is similarly no evidence or argument that Officer Bailes or anyone else associated with the arrest did not act in good faith where the backpack was concerned.

Finally, defendant argues that it was not necessary for Officer Bailes to retrieve the backpack from the Go-Mart and thus subject it to a search because defendant's girlfriend, Melinda Thompson, was present and could have taken custody of the bag. This is not persuasive. According to the evidence, Ms. Thompson did not arrive at the scene until after defendant had been arrested. Further, defendant was in possession of this backpack during the events which preceded his arrest. Therefore, and according to Officer Bailes' testimony, protocol dictated processing the backpack with defendant following his arrest. The Court is unaware of any legal authority to the contrary.

In addition, defendants' argument ignores the fact that Ms. Thompson did not ask for the backpack or tell Officer Bailes that she was there to retrieve the backpack.

Defendant's Motion to Suppress Evidence [**Doc. 24**] is **DENIED**. The Objections to the R&R [**Doc. 60**] are **OVERRULED** and the R&R [**Doc. 47**] is **ADOPTED**.

It is so **ORDERED**.

The Clerk is hereby directed to transmit copies of this Order to counsel of record herein.

**DATED:** July 16, 2019.

/s/ John Preston Bailey
JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE